[No. 3131.  Decided March 2, 1899.]

MARY D. SMITH, *Appellant,* v. CITY OF SEATTLE, *Respondent.*

APPEAL—SUFFICIENCY OF COMPLAINT—WAIVER OF OBJECTIONS—RE-
MOVAL OF LATERAL SUPPORT—MEASURE OF DAMAGES—INSTRUC-
TIONS.

Where the sufficiency of a complaint has been sustained upon
appeal, and another trial has been had upon the same complaint,
from which a second appeal has been prosecuted, the sufficiency
of the complaint cannot be again attacked upon the second
appeal, upon a point not presented upon the former hearing, if
the objection could have been presented at that time.

In an action against a city for damages caused by so grading
a street as to deprive abutting property of lateral support, in
which the evidence shows that injury resulted and that the city
had knowledge that it would probably result from its act, the
question of what a reasonably prudent contractor or grading
engineer would have done under the circumstances is not a
proper one for submission to the jury.

Where damages are recoverable by reason of the removal of
lateral support, the depreciation of the property caused by an
approaching slide as a result thereof, although the slide began
to approach plaintiff's property two years prior to the commence-
ment of the action, should be eliminated from the jury's calcu-
lations in assessing the amount of damages.

Appeal from Superior Court, King County.—Hon.
E. D. BENSON, Judge.  Reversed.

*Smith & Cole,* for appellant.

*W. E. Humphrey,* and *Edward Von Tobel,* for re-
spondent.

The opinion of the court was delivered by

GORDON, C. J.—This action was to recover damages for
the removal of the lateral support of plaintiff's land.  The
jury returned a verdict in her favor for $150.  Being dis-

satisfied with the amount of the recovery, plaintiff moved for a new trial, which motion was overruled, and she has appealed.

Respondent urges as a preliminary consideration, that the complaint does not state a cause of action, but we think it cannot be permitted to urge the point. This cause was here on a former appeal by the plaintiff from an order of the lower court which sustained a general demurrer to the complaint. (See *Smith v. Seattle,* 18 Wash. 484, 51 Pac. 1057, 63 Am. St. Rep. 910, for a full statement of the case.) That order was reversed, this court concluding that the complaint was sufficient. It is true that the ground upon which the respondent now seeks to attack the complaint was not presented on the former appeal, and, inasmuch as the point was not presented nor passed upon at that time, counsel for the city insist that they have a right to urge it now. While it is true that the point was not raised on the former appeal, it is patent that it might have been, and we think it would be a bad and unwarranted practice to permit the point to be urged now. In support of its general demurrer, respondent was entitled to urge the insufficiency of the complaint from any standpoint, and must be held to have waived every point not presented at the former hearing. Any other practice would result in cases coming here piecemeal, delaying litigation, increasing the expense to parties litigant and burdening the court with unnecessary labor. It would be productive of much mischief and cannot be tolerated. Respondent's counsel cite in support of their position a single case,—*Davis v. Krug,* 95 Ind. 1,—which we cannot follow, and the court in that case frankly admitted that the contrary view from that held by them is "supported by many respectable authorities."

It is appellant's contention that the case was submitted to the jury upon an erroneous theory, and in this conten-

tion we think she is borne out by the record. Instructions one and three were as follows:

" If you believe from the evidence in this cause that the damage, if any, to plaintiff's property was caused wholly or in material part by the grading of and removing dirt from Mill street (now Yesler Way), and at the time of said grading or removal a street grading engineer and contractor of reasonable experience, knowledge and prudence would, by reasonable inspection of the street grade, have known such grading of said Mill street was liable to injure the property of plaintiff by causing the same to slide, then you will bring in a verdict for plaintiff, for such sum as plaintiff is shown by the evidence to have been injured, not exceeding the amount demanded in her complaint."

" You are not allowed to speculate or guess as to whether the acts of the city caused this injury, but before plaintiff can recover in this case, not only that the acts of defendant city actually caused the injury, but that such acts, or some of them, were not such as a reasonably prudent and competent street grader and engineer would have done under like circumstances."

In these and other instructions the question to which chief prominence is given is whether or not a street grade engineer or contractor of reasonable experience and prudence would have known that the grading of Mill street was liable to injure the property of plaintiff by causing the same to slide. We think it a just criticism of the charge to say that it assumed a doubt where none existed. The improvement of Mill street was authorized by the city council in the summer and fall of the year 1887. Section 3 of the ordinance of July 16, 1887, providing for the grading of the street, is as follows:

" That said grading and building of sidewalks be done *under the supervision and direction of the city surveyor,* and the said improvements shall be completed on or before the 15th of November, 1887."

On August 22d of that year the city engineer addressed the following communication to the council:

" To the Councilmen of Committee on Streets of the City of Seattle, W. T.:

" Dear Sirs—I wish to call your attention to the condition of Mill street grade between Sixth and Seventh streets on the north and between Eighth and Ninth on the south side. At these points, particularly on the north side, the material is of a very unstable character, having been composed largely of blue clay which is full of water and is constantly encroaching on the street and will continue to do so unless some steps are taken to remedy it. It seems worse than useless to put down sidewalks at these places under this condition of things, as they will at once be thrown out of line by the movement of the slide and covered up by the masses continually falling from the top. There is even danger that some unwary passer-by may be crushed by some avalanch of earth. I call your attention to this because I am at a loss to know how to proceed *legally* in the matter. To cure the evil it will be necessary to incur considerable expense both as to the removal of the overhanging mass of earth and the construction of a suitable bulkhead or other protection. Unless something is done soon, it is my opinion that a disastrous slide will occur when the rains set in, or possibly before, which will bring in houses which are within one hundred feet of the street and endanger the safety of the occupants. Hoping to hear from you soon on this important subject, I remain truly yours,     JOHN G. SCURRY, City Engineer.

"Seattle, Aug. 22, 1888.          (H. M. Wellman.)"

Accompanying this communication the engineer submitted a plan and estimate for a bulkhead on Mill street. It also appears that a meeting was called by the common council on the 24th of October, 1887, the object of the meeting, as stated by the mayor, being "to see if the council deems it advisable to take any steps with regard to the caving or sliding of property upon the Mill street grade." Reading further from the journal of their proceedings:

"The city attorney being called upon, gave it as his opinion that the city would not be liable for the caving or sliding of property along said grade." Enough of the record has been set forth to show that years before the injury of which plaintiff complains occurred, the council of the city were advised of the character of the soil abutting on the street, and of the necessity for the construction of a suitable bulkhead in order to prevent "disastrous slides," and that they elected to stand upon the assumption that the city would not be liable for injuries caused by "caving or sliding of property along said grade."

Since this street was graded, this court has passed upon that question in *Parke v. Seattle,* 5 Wash. 1 (31 Pac. 310, 34 Am. St. Rep. 839), holding that the city is liable for any damages caused in grading a street whereby lands abutting thereon are deprived of lateral support. That case resulted from an injury to property abutting on this very same street. Under the undisputed facts in this case and the law as previously settled by this court, the question of what a reasonably prudent contractor or grading engineer would have done was not properly a question for the jury, and the submission of that question could only serve to confuse and mislead them. What they should have been required to determine was the effect upon appellant's property of the failure of the city to provide sufficient lateral support to the property abutting on the street, which had been excavated to a great depth,—approximately twenty-five feet. The smallness of the recovery in the present instance can only be accounted for upon the assumption that it resulted from the erroneous charge. Instructions one, seven, eight and nine, requested by the plaintiff, or their equivalent, should have been given, and the jury should have been told that, in estimating the value of plaintiff's property, they should eliminate from their calculations any depreciation in the property

caused by the approaching slide, providing, of course, such slide resulted from the failure of the city to furnish suitable lateral support. And, in this connection, the fact that the slide began to approach plaintiff's property upwards of two years prior to the commencement of the present action would make no difference.

We think there is no merit in the respondent's contention that the statute of limitations had run against plaintiff's cause of action, or the further contention that her claim was not filed within six months after the injury occurred. These questions, we think, were fully disposed of in the former appeal.

The further claim that the work was done by an independent contractor, for whose negligence the city is not liable, is not borne out by the record. It appears by § 3 of the ordinance which authorized the work, that it was required to be done under the supervision of the city's own officers. Respondent cannot invoke the rule which excuses a person or corporation from the consequences of an act of negligence committed by an independent contractor.

The judgment appealed from will be reversed and the cause remanded for further proceedings.

DUNBAR, FULLERTON, ANDERS and REAVIS, JJ., concur.